Herman and Fannie C. Riseman v. Commissioner.
Riseman v. Commissioner
Docket No. 8857.
United States Tax Court
1947 Tax Ct. Memo LEXIS 132; 6 T.C.M. (CCH) 873; T.C.M. (RIA) 47212; July 25, 1947
*132 James B. Martin, Esq., and J. D. Picco, Esq., for the petitioners. Maurice S. Bush, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioners challenge respondent's determination of deficiencies in income tax and penalty, as follows: 1943
$2,726.96 [1]
1944
1,525.25
The year 1942 is involved by virtue of the provisions of the Current Tax Payment Act of 1943. The deficiencies result from respondent's addition to petitioners' net income of the sums of $8,561.60, $7,095.06, and $5,954.12 for the years 1942, 1943, and 1944, respectively, as alleged unexplained bank deposits. The 5 percent penalty was added, as petitioners did not file their 1942 return until March 27, 1943. Findings of Fact Petitioners, husband and wife, are residents of Springfield, Illinois, and filed their joint tax returns for the years involved on a calendar year-cash basis, with the collector for the eighth district of Illinois. Hereafter Herman Riseman will be referred to as petitioner. *133 Their 1942 tax return was filed on March 27, 1943, and not on or before March 15, 1943, due to negligence and not due to reasonable cause. During the three years involved, and since 1937, petitioners operated a pawn shop in Springfield, Illinois, which, together with various rental properties they owned, comprised the principal source of their income. Petitioners kept no adequate books and records of their income-producing transactions, and in order to ascertain their taxable income respondent was compelled to utilize their bank deposits as a source of information. Petitioners used their bank accounts as their "bookkeeping system." On their tax returns for the years involved petitioners reported as their net taxable income (or loss) the following amounts: 1942
$2,125.75 [2]
1943
(335.02) victory tax net income
$1,448.06
1944
1,581.07
*134 Gross income, as reflected on the tax returns for these years, was as follows: 1942
$4,264.01
1943
2,923.53
1944
2,055.18 Of these amounts, the following represent net profits (or loss) from business, as shown on the tax returns: 1942
$2,916.06
1943
2,396.64
1944
(386.45)
The proceeds from the business were used to meet petitioners' general living expenses, but these receipts and expenditures were not generally reflected in banking transactions, as cash was taken from the cash register from time to time as it was needed to meet these expenses. From 1925, when petitioner was adjudicated a bankrupt, through 1941, petitioners made from $2,000 to $2,500 per year. Their total bank deposits during each of the years were as follows: 1942
$13,023.22
1943
18,958.37
1944
15,711.57
Of these deposits respondent has determined that the following amounts, for each of the years, were unexplained: 1942
$8,561.60
1943
7,095.06
1944
5,954.12
Petitioners offered the following explanations of their bank deposits in excess of gross income, the propriety of which respondent has conceded, but at the same time *135 urging that they are absorbed in that part of petitioners' bank deposits which he has not deemed unexplained: (1) $1,300, deposited on January 24, 1942, represented the return of a deposit advanced to guarantee transportation for an immigrant into this country. (2) $2,000, deposited on September 22, 1942, represented the proceeds of a postal savings certificate. (3) $1,000, deposited on March 5, 1943, represented currency left with petitioner for safekeeping and returned by him on March 15, 1943. (4) Deposits of $7,700 on January 4, 1943, $501.35 on May 15, 1944, and $341.46 on May 16, 1944, were transfers from a savings account to a checking account. (5) $2,100, deposited on July 29, 1944, represented a part payment by a purchaser of real estate located in the City of Springfield. Further explanations offered by petitioners which respondent considers as unwarranted were: (1) $8,105.02, deposited at various times during the years in question, represented checks cashed by petitioners for various persons. (2) $10,041.26, deposited at various times during the years in question, represented cash on hand of $7,961.92 at the beginning of the period involved - January 1, 1942 - *136 and (3) the proceeds from the sale of an old-coin collection owned by petitioners for many years prior to the first year involved. The cashing of checks for various individuals was an adjunct of petitioners' pawnshop business. The checks so cashed were deposited in the bank and petitioners would then cash their checks so as to have funds available to continue this type of operation. At the time of the hearing in this proceeding petitioners were possessed of old coins of the face value of $133.48, part of a collection started by petitioner's father-in-law and given to petitioner's wife by her mother, which collection included United States gold coins. It was not listed among their assets upon a report prepared at their request by Dun & Bradstreet, Inc. The report was to impress immigration authorities with petitioners' financial condition for purposes of evaluating their ability to sponsor an immigrant's entrance into this country. On this report petitioner's assets and liabilities were recorded, as follows: ASSETS
LIABILITIES
Cash on hand and in bank
$ 7,136.94
Merchandise
10,696.61
None
Postal savings
2,000.00
Total current
19,833.55
Mortgages
$ 1,851.61
Machinery and fixtures
500.00
Real estate
18,500.00
NET WORTH
36,981.94
Total Assets
$38,833.55
Total
$38,833.55
*137 The item, cash, consisted of part of the proceeds of a sale of real property in 1940, of which over $7,000 was placed by petitioners in their safe deposit box and kept substantially intact, except for small, infrequent withdrawals that were replaced, until 1944 when the funds were used to purchase other real estate. For purposes of this proceeding petitioners employed a firm of public accountants sometime in the late spring of 1946 to make a "special examination" of their records in order to determine their income for each of the years and their net worth as of the beginning of the period January 1, 1942, and end of the period involved, December 31, 1944. Of petitioners' total deposits for the three years involved, equaling $47,875.79, the sum of $41,477.45 falls into the following categories: 1. Petitioners' gross income
$16,350.28
(Now admitted by them -
see footnote 2, supra)
2. Total of items admitted by
respondent
14,942.81
3. Old-coin collection
2,079.34
4. Check cashing
8,105.02
Total
$41,477.45 Petitioners' total understatement of their income (exclusive of any amount contained in item 1 above) for the three years involved was $6,398.34. *138 Petitioners have understated their income for each of the three years involved, in addition to the amounts now admitted by them, in the amount of $2,133. Opinion Although entirely factual, this controversy actually reduces to three disputed items, Taking the concessions on both sides, respondent's assertion that, on the basis of an examination of his bank deposits, petitioner understated his income for the three years in dispute, and petitioner's denial on the ground that the excess bank deposits can be adequately explained, leaves open the existence and amount of cash on hand at the beginning of the period, checks cashed for others and deposited, and a collection of old coins said to have been partly sold off during the period. These issues have all been disposed of by the factual determinations embodied in our findings of fact. We have not given any effect to the claim that the cash on hand accounts for any of the deposits questioned by respondent. Even though petitioner had, as he insists, a cash fund in his safe deposit box of over $7,000, produced by the sale of a piece of real estate, his testimony that he always endeavored to keep this amount intact, and an absence of *139 any evidence that it constituted a part of the bank deposits at any time, have led us to eliminate it entirely as a reduction of the receipts with which petitioner is charged. On the other hand, we are satisfied that a coin collection of some character and substantial value did exist. The amount actually in dispute in this connection is comparatively small n2 and we think petitioner's position in this respect should be sustained. We take the same view of the claim as to the cashing of checks for others. It appears that checks were cashed at banks or elsewhere amounting to between eight and nine thousand dollars. As the business was conducted, cash appears to have been needed primarily for these check-cashing operations. Combined with petitioner's testimony that about $10,000 of such transactions took place, we think the accountants' conclusion that $8,105.02 represented deposits attributable to this source is not unreasonable. [3]
*140 Neither the disposition of the coin collection nor the check cashing is, however, clearly confined to specific years, although petitioners have treated the entire gain from the collection as falling in 1942. In the absence of any more accurate standard, we have accordingly apportioned the total understatement for the three years as applicable ratably over all three. The result is the understatement for each year appearing in our findings. Petitioners do not contest the propriety of applying the 5 percent penalty for negligent failure to file the 1942 return on time. Decision will be entered under Rule 50. Footnotes
1. Consisting of $2,476.51 tax; $109.95, 5 percent penalty for late filing of 1942 tax return; $140.50, interest for 1942.↩
2. Petitioners concede that if it were found that they were possessed of an old-coin collection of the face value of $4,500 and that they sold the collection for $6,000, $1,500 profit realized thereon should be taken up as income in 1942. Respondent challenges the existence of such collection, its value, and its sale. Our findings on this point appear infra. They also now concede, in addition to the $1,500 profit, gross income in the following amounts, as determined by their accountants as part of the special examination of their records more fully described hereinafter: ↩
1942
$4,503.08
1943
4,284.38
1944
6,062.82
3. Petitioner attributes $10,041.26 to cash on hand and the coin collection. Since $7,961.92 is claimed as cash on hand, only $2,079.34 is attributable to the collection, of which $1,500 is conceded to have become taxable gain. The balance, $579.34, is not an unreasonable valuation for the original collection if any coins of appreciable value existed.↩